## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| Noel A. Day, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:08-cv-1888 ERW |
| | ) | |
| Robinwood West Community Improvement | ) | |
| District, a political subdivision, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum in Support of Plaintiffs'
### Motion for Partial Summary Judgment

I.       Introduction

Plaintiffs seek summary judgment on two of the four claims asserted in their first amended complaint (Doc. #34): (1) that R.S.Mo. § 67.1401.2(14)(c) violates the Equal Protection Clause of the Fourteenth Amendment by permitting owners of real property to vote on the basis of property ownership in elections for representation of the governing body for residential community improvement districts that have elected to be political subdivisions, thereby diluting the votes of registered voters (Count I); and (2) that Defendant's application of the statute to permit multiple votes to individuals who meet the statutory definition of qualified voter for more than one reason additionally violates the Equal Protection Clause, thereby diluting the votes of qualified voters who receive fewer ballots than other voters (Count III). Plaintiffs seek declaratory judgment that Defendant's conduct of the June 10, 2008, election violated their right to equal protection and an award of nominal damages.  In addition, Plaintiffs request declaratory judgment that the implementation of R.S.Mo. § 67.1401.2(14)(c) in a manner that

dilutes their votes for future director elections would violate equal protection and permanent injunctive relief.

II.    Summary Judgment Argument

A.    Summary Judgment Standards

This Court should grant summary judgment where it finds that, reviewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and movants are entitled to judgment as a matter of law. *Grey v. City of Oak Grove*, 396 F.3d 1021, 1034 (8th Cir. 2005). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996). There are no disputed material facts in this case, so Plaintiffs are entitled to summary judgment.[1]

B.    R.S.Mo. § 67.1401.2(14)(c) is unconstitutional because it violates the Fourteenth Amendment of the United States Constitution (Count I)

Expansion of the voter base beyond registered voters (to property owners residing outside the boundaries of a governmental unit and to property owners residing in boundaries of the governmental unit who are not registered to vote) dilutes the votes of registered voters residing within the community improvement district.  There is no government interest sufficient to justify dilution of the votes of registered voters by expanding the definition of qualified voter to persons who are not registered voters within the district.

---

[1]    As explained in Plaintiffs' memorandum in support of their motion to compel (Doc. # 37), Plaintiffs have yet to receive any responsive documents to their request for production served on March 13, 2008.  This motion is made without the benefit of that discovery, which Plaintiffs believe would only bolster their factual contentions.

Defendant is a political subdivision of the State of Missouri.  SUMF ¶ 1.   Its board of directors is its governing body.  *Id.* "For purposes of the election of directors of the board," R.S. Mo. § 67.1401 defines "qualified voters" of a community improvement district as "registered voters and owners of real property. . . ." R.S.Mo. § 67.1401.2(14)(c) (hereinafter referred to as "the challenged portion of R.S.Mo. § 67.1401").[2]

Plaintiffs Noel A. Day, Aimee N. Pavey, James M. Strake, Barbara E. Monroney, Helen M. Horn, Janet G. Kirk, Paula M. Smith, Barbara A. Schlottach, J. Sharon Wilson, Judith M. Hale, Cathy Doyel, David P. Hood, Esther Swartz, and Adrienne W. Breen are registered voters who reside within Robinwood West Community Improvement District.[3] SUMF ¶¶ 4-18.  As registered voters, they received ballots for the June 10, 2008, election allowing them to cast a vote for their representatives on the board of directors. *Id.* In addition, property owners who did not reside within the district and property owners who were not registered voters were permitted to cast ballots for the director positions. SUMF ¶ 25.  This expansion of the voter base to include persons[4] who are not residents that are registered to vote dilutes the votes of resident who are registered to vote.

---

[2]     In contrast, for purposes of community improvement district elections for approval of real property taxes, business license taxes, or sales taxes, "qualified voters" are defined as registered voters or "[i]f no registered voters reside in the district, the owners of one or more parcels of real property[.]" R.S.Mo. § 67.1401.2(14)(a), (b).

[3]     Plaintiffs Pauline E. Strake and Herbert A. Strake do not reside in the district and are permitted to vote solely by virtue of their joint ownership of property inside the district, *see* SUMF ¶ 17; accordingly, their votes are not diluted by the challenged statute's expansion of the voter base and they do not have standing with respect to Count I of the first amended complaint.

[4]     "Persons" in the case of owners of real property in Robinwood West Community Improvement District includes individuals, married couples, trusts, and corporations.

1.    Voters have a substantive right not to have their votes diluted by expansion of the voter base

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Const. Am. XIV.   If a state adopts an electoral system, the Equal Protection Clause of the Fourteenth Amendment confers upon a voter a substantive right to the "opportunity for equal participation by all voters in the election of [] legislators." *Reynolds v. Sims*, 377 U.S. 533, 566 (1964).  The right to equal participation is recognized in the one person, one vote principle.  See *Hadley v. Junior College District*, 397 U.S. 50, 56 (1970).

The right to vote is "a 'fundamental political right[.]'" *Miller v. Moore*, 169 F.3d 1119, 1125 (8th Cir. 1999) (quoting *Williams v. Rhodes,* 393 U.S. 23, 38 (1968) (Douglas, J., concurring)). The Supreme Court has observed that "the idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Bush v. Gore*, 531 U.S. 98, 107 (2000) (quoting *Moore v. Ogilvie,* 394 U.S. 814, 819 (1963)).  An individual's fundamental right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.* at 105 (quoting *Reynolds*, 377 U.S. at 555); *see also Plyer v. Doe*, 457 U.S. 202, 233 (1982); *City of Mobile v. Bolden*, 446 U.S. 55, 115 (1980); *Moore*, 394 U.S. at 818. With respect to the franchise, the concept of equal participation requires application of the principle of "one person, one vote." *Reynolds*, 377 U.S. at 558; *see Quinn v. Millsap*, 491 U.S. 95, 109 (1989) (applying Equal Protection Clause to board of freeholders established by Missouri's Constitution). The dilution of the weight of an individual's vote by expansion of the voter base restricts the individual's right to vote.

2.    There is no compelling state interest that justifies diluting the weight of citizens' votes by expansion of the voter base

The dilution of the weight of a citizen's vote by allowing persons not qualified or registered to vote in the election to cast ballots restricts the citizen's right to vote.  A restriction on the right to vote cannot be justified unless it serves a compelling state interest.  *See Hill v. Stone*, 421 U.S. 289, 297 (1975) (restrictions of the franchise not involving residence, age, or citizenship must serve a compelling state interest).

There is no government interest in expanding the voting base beyond resident registered voters that justifies the dilution of residents' votes. To the contrary residents "have a greater individual interest in the development of and welfare of the town than do nonresidents." *Massad v. City of New London*, 652 A.2d 531, 538 (Conn.Super. 1993).  The interest stems from their "greater personal knowledge of the city's conditions," and the fact that "as inhabitants, they have a greater personal stake in the city's welfare and progress…" *Id.*  Residents have a "greater knowledge and interest in local affairs."  *Foothill-De Anza Comm. College Dist. v. Emerich*, 158 Cal.App.4th 11, 25 (Cal.App. 2007).  For these reasons, "[i]t is clear that nonresident landowners have no constitutional right to vote in local general elections." Robert C. Ellickson, *Suburban Growth Controls: An Economic and Legal Analysis*, 86 Yale L.J. 385, 404 n.47 (1977); s*ee also Dunn v. Blumstein*, 405 U.S. 330, 343 (1972) (recognizing "the power to require that voters be bona fide residents of the relevant political subdivision").

There is no apparent government interest promoted by allowing property owners to vote where doing so dilutes the votes of registered voters. While property owners might conceivably have an interest with respect to property tax issues, the statute explicitly *does not* allow property

owners to vote on tax issues for a residential community improvement district. R.S.Mo. §
67.1401.2(14)(a), (b).

     3.      Registered voters are held to a different standard than property owners

The statute also dilutes the votes of registered voters by holding property owners to
different standards in terms of both qualifications to receive a ballot and the scrutiny a ballot
receives before it is counted. Equal protection demands that ballots be considered according to
specific and uniform standards. *Bush v. Gore*, 531 U.S. at 105-06. In the case of community
improvement district elections for directors, ballots cast by property owners are not considered
according to the same standards as ballots cast by registered voters.

The ballots of registered voters are scrutinized in a manner that the ballots of property
owners are not. SUMF ¶ 31. The signatures of registered voters on the ballot envelope are
compared to the signature on file. *Id.* Indeed, in the 2007 director election an individual forged a
ballot and was caught when his signature did not match the signature on records maintained by
Board of Elections. *Id.* There is no such mechanism in place to ensure that persons who vote as
property owners are qualified to do so. *Id.* There are no signatures on file for property owners
that may be used for comparison. In addition, many homes are owned jointly, by a trust, or by a
corporation. SUMF ¶ 26. The statute does not prescribe any method for determining who is
authorized to a ballot on behalf of a married couple, a trust, or a corporation and there is no
process in place by which the authority of the person who submits the ballot envelopes can be
verified.[5] SUMF ¶ 32. The different standards applied to determine whether to count votes from

---

[5]     In the run up to the June 10, 2008 director election, the then-president of Defendant's
board recommended that if joint property owners do not agree on how to vote their shared ballot
that the should flip a coin. SUMF ¶ 29. Plaintiff Hale was not permitted to vote as a property
owner—despite being a joint owner—because her husband beat her to the mailbox and cast the

the two classifications of voters—property owners and registered voters—deprive registered voters of equal protection.

The standard one must meet to even receive a ballot is significantly different for the two classifications of voters created by the statute.  To vote as a registered voter in community improvement district elections, one must be a citizen of the United States, over the age of 18, a resident of Missouri, a resident of the political subdivision (*i.e.*, the community improvement district), cannot have a court-appointed guardian, cannot be involuntarily committed to a mental health facility, not be serving a sentence for a felony, and not have been convicted of a crime related to the right to vote.  Mo. Const. Art. 8, § 2; R.S. Mo. § 115.133.  No such requirements are imposed on property owners who wish to vote.  SUMF ¶ 31. Consistent with the statute, neither Robinwood West Community Improvement District, nor anyone on its behalf, screens the list of property owners to determine if they would meet requirements imposed on registered voters. *Id.*

Because R.S.Mo. § 67.1401.2(14)(c) is unconstitutional in that it allows property owners to dilute the votes of registered voters and have their ballots considered under different standards, Plaintiffs are entitled to summary judgment on Count I of their amended complaint.

    C.  R.S.Mo. § 67.1401.2(14)(c) is unconstitutional as applied because it deprives Plaintiffs of their Fourteenth Amendment right to equal protection (Count III)

---

property owner ballot. SUMF ¶ 29. There is no uniform practice or policy with respect to the handling of ballots cast by virtue of joint ownership or ownership by an entity. *Id*.

Even if R.S.Mo. § 67.1401.2(14)(c) is not unconstitutional, the manner in which Defendant conducted its June 10, 2008 election (and would have conducted future elections absent the preliminary injunction now in effect) failed to provide equal protection.[6]

In the June 10, 2008, election for director, Plaintiffs Day, James Strake, and Pavey, who are registered voters but not property owners, each received and cast one ballot.[7] SUMF ¶¶ 4-6. Plaintiffs Monroney, Horn, Kirk, Smith, Doyel, Breen, and Swartz received and cast two ballots for the election of directors. SUMF ¶¶ 7-9, 13, 15, 16, 18. They each received one ballot as a registered voter and another as a property owner. *Id.* Plaintiff Schlottach received one ballot as a registered voter in her legal name, Barbara A. Schlottach, and two additional ballots as a property owner, one addressed to Barbara Frank, the name under which she owns the first property; and another ballot addressed to Barbara Frank Schlottach, the name under which she owns her other property. SUMF ¶ 10. Schlottach was confused about receiving three ballots, so she did not cast any ballots. *Id.* Plaintiff Wilson received a ballot as a registered voter and another addressed jointly to her and her deceased husband, whose name appears with hers on the title to her home. SUMF ¶ 11. She cast both ballots. *Id.* Plaintiff Hale received and returned a ballot as a registered voter. SUMF ¶ 12. Her name also appeared on the ballot addressed to both her and her husband, as joint owners of their home, but Hale did not cast that ballot because her husband beat her to the mailbox and cast the property owners' ballot, along with his own ballot as a registered voter. *Id.* Plaintiff Hood received a ballot addressed only to him and another addressed to both him and his wife, with whom he owns their property jointly. SUMF ¶ 14. He

---

[6]     Defendant previously claimed it is not responsible for the conduct of its election or any associated constitutional violations. Contrary to Defendant's claim, the St. Louis County Board of Elections provides a perfunctory service for Defendant, while Defendant is the chief decision maker, dictating the substance of ballot issues. SUMF ¶¶ 20-23.

[7]     All elections for community improvement districts are conducted by mail. SUMF ¶¶ 20-21. Voters receive a ballot in the mail and return it in person or by mail. SUMF ¶ 21.

cast only one ballot. *Id.*  Plaintiffs Herbert and Pauline Strake received and cast a single ballot that was addressed to both of them, as joint property owners. SUMF ¶ 17.

The experiences of the Plaintiffs who received multiple ballots are not unique.  Plaintiff Monroney, for instance, knows a married couple that, between them, received five ballots for the June 10, 2008, election. SUMF ¶ 7. They received one ballot each as registered voters and three ballots jointly on the basis of the three properties they own within the district. *Id.* Defendant understood that sending ballots to property owners would result in certain individuals casting multiple ballots. SUMF ¶ 28. The then-president of Defendant's board of directors explained at public meetings that registered voters and homeowners would be permitted to cast and have counted multiple ballots for the director vacancies. *Id.*

Defendant conducted two elections simultaneously on June 10, 2008. SUMF ¶ 24. There was a vote on a property tax issue, on which only registered voters were allowed to cast a ballot, and the director election for which ballots were distributed to voters and property owners. *Id.* The ballot sent to registered voters contained both elections on the same ballot. SUMF ¶ 25. A total of 741 ballots that were returned included the election for director while only 477 included the tax issue. SUMF ¶ 33.  This means that 264 of the 741 ballots cast in the election for director were ballots cast by a property owner. SUMF ¶ 33. Defendant does not know how many of the 264 persons who cast a ballot as a property owner also cast a ballot as a registered voter. SUMF ¶ 33. Plaintiff has been unable(?) to ascertain the number of persons who cast more than one ballot.

The election was conducted under Defendant's practices and policies applying R.S.Mo. § 67.1401.2(14)(c). SUMF ¶ 24. The conduct of the election deprived Plaintiffs of equal protection because voters were allowed to cast more votes than they were and Plaintiffs' votes thereby had

less weight. In practical terms, Defendant allowed ballot-box stuffing that diluted the power of a single vote. The detrimental effect on democracy is real:

> It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted. In *Mosley* the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection … as the right to put a ballot in a box.' The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing. As the Court stated in *Classic*, 'Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted ...' … The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

*Reynolds v. Sims*, 377 U.S. at 554-55 (internal citations omitted). Because different qualified voters received a different number of votes based on the number of properties they own, the votes of those provided fewer votes than others are diluted. This dilution of the vote violates the one-person, one-vote requirement of the Equal Protection Clause of the Fourteenth Amendment.

The harm caused by Defendant's violation of the equal protection clause was real in the June 10, 2008 director election. There were four candidates for the two open seats on the board.[8] SUMF ¶ 25. While 264 votes were cast by property owners, it is unknown what percentage of

---

[8] The names of three candidates appeared on the ballot; the other was a write-in candidate. SUMF ¶ 25.

that number represented multiple votes by property owners who had also cast ballots in the director election as registered voters.  Only 125 votes separated the highest vote getter from the lowest.  SUMF ¶ 33.  There was a mere 38 vote difference between the second place finisher (who won a seat on the board) and the candidate in third place (who did not). *Id.* It is reasonable to expect that the conduct of elections in the same manner would have a similar effect in the future if permitted to continue.

Because the manner in which Defendant applies R.S.Mo. § 67.1401.2(14)(c) dilutes the weight of any individual vote, Plaintiffs are entitled to summary judgment on Count III of their amended complaint.

III.    Relief

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Marbury v. Madison, 1 Cranch 137, 163 (1803).  Summary judgment is appropriate on Counts I and III of Plaintiffs' amended complaint.  Declaratory judgment and injunctive relief are appropriate on both counts.  Nominal damages to each Plaintiff for the violation of his or her constitutional right to equal protection in the conduct of the June 10, 2008, election for directors should also be awarded.

A.    Declaratory Judgment

The federal Declaratory Judgment Act allows that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  Declaratory judgment is appropriate where resolution of a controversy would benefit from "specific relief through a decree of a conclusive nature, as distinguished from an opinion advising what the law would be upon a hypothetical state of

facts." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998) (quoting *Aetna Life Ins. Co. of Hartford*, *Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937)).

Declaratory judgment is appropriate in this case because there is an actual, active controversy between Plaintiffs and Defendant with respect to whether Defendant's conduct of elections (by its application of R.S.Mo. § 67.1401.2(14)(c)), specifically, and, more generally, R.S.Mo. § 67.1401.2(14)(c)'s expansion of the pool of voters in elections to membership on a community improvement district's governing body.

B.    Nominal Damages

Plaintiffs are entitled to an award of nominal damages for the violation of their constitutional rights by the Defendant's conduct of it June 2008 election for directors.  A party is entitled to an award of nominal damages when a constitutional right is violated because of the "importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978);  *see also Farrar v. Hobby,* 506 U.S. 103, 112 (1992) ("*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his [constitutional] right ... but cannot prove actual injury").

Because each Plaintiff was injured by the conduct of the June 10, 2008, director election by having his or her vote diluted as a result of Defendant's practice of causing individuals to receive and subsequently counting multiple ballots per person, each Plaintiff is entitled to an award of nominal damages from Defendant.

C.    Permanent Injunction

To obtain a permanent injunction, a plaintiff must show the following: (1) actual success on the merits; (2) that they face irreparable harm; (3) that the harm to them outweighs any harm to others; and (4) that an injunction serves the public interest.  *Bank One, Utah v. Guttau*, 190

F.3d 844, 847 (8th Cir. 1999) ("The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits"); *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (preliminary injunction standards).  The sole difference between the standards for preliminary and permanent injunctions is that for a permanent injunction the movant must show actual success, and not merely a probability of success, on the merits. *Guttau*, 190 F.3d at 847.

### 1.  Actual Success on the Merits

As explained, *supra.*, Plaintiffs are entitled to summary judgment on Counts I and III of their amended complaint.  A grant of summary judgment constitutes actual success on the merits.

### 2.  Irreparable Harm

"[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters," *Reynolds v. Sims*, 377 U.S. 533, 566 (1964), and the loss of constitutional rights, even for brief periods, itself constitutes irreparable harm as a matter of law. *See Elrod v. Burns*, 427 U.S. 347, 373-4 (1976). Because Plaintiffs have demonstrated a violation of the Equal Protection Clause of the Fourteenth Amendment, they will be irreparably harmed absent continued prospective relief. *See also Montano v. Suffolk County Legislature,* 268 F.Supp.2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or dilution of the right to vote constitutes irreparable harm.")

As this Court held in granting a preliminary injunction, Plaintiffs will be irreparably harmed absent injunctive relief.  *See* Doc. # 33.

### 3.  Balance of harms and public interest

While Plaintiffs have demonstrated that they will be harmed absent continuing injunctive relief, Defendant cannot show how it will be harmed by adhering to the Constitution.

The public interest supports upholding the Equal Protection Clause of the Fourteenth Amendment. In this case, a permanent injunction is necessary to prevent a government entity from violating the Constitution, and so an injunction is in the public interest. *See Doe v. South Iron R-1 School Dist.*, 453 F.Supp.2d 1093, 1103 (E.D.Mo. 2006), *aff'd* 498 F.3d 878 (8th Cir. 2007); s*ee also Phelps-Roper v. Nixon*, 545 F.3d 685, 689 (8th Cir. 2008) ("It is always in the public interest to protect constitutional rights.").

IV.    Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court grant their motion for partial summary judgment by entering judgment on behalf of Plaintiffs on Counts I and III of the amended complaint; entering declaratory judgment that R.S.Mo. § 67.1401.2(14)(c) violates the Equal Protection Clause of the Fourteenth Amendment on its face and as applied by Defendant; award Plaintiffs nominal damages for the violation of their constitutional right to equal protection in Defendant's conduct of its June 10, 2008, election for directors; enter a permanent injunction prohibiting Defendant its officers, agents, servants, employees, attorneys, and all persons acting in concert with them, or in connection with them, from mailing ballots for director elections to any individual or entity that is not a registered voter residing within the District or otherwise permitting any qualified voter to receive, cast, or have counted more than one vote in any election; and allowing to Plaintiffs such other and further relief as is just an proper under the circumstances.

Respectfully submitted,


/s/ Anthony E. Rothert
ANTHONY E. ROTHERT #518779
American Civil Liberties Union of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112
e-mail: tony@aclu-em.org

Daniel Kuehnert, # 5220239
3623 A Shenandoah Avenue
St. Louis, Missouri 63110
COOPERATING ATTORNEY FOR
        ACLU OF EASTERN MISSOURI
COUNSEL FOR PLAINTIFFS

15

<u>Certificate of Service</u>

I certify that a copy of the forgoing was filed electronically with the Clerk and delivered

by operation of the CM/ECF system to all counsel of record on the 17th day of June, 2009.


<u>/s/ Anthony E. Rothert</u>