UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NOEL A. DAY, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | Case No. 4:08CV01888 ERW |
| ROBINWOOD WEST COMMUNITY IMPROVEMENT DISTRICT, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment [doc. #40].

### I. BACKGROUND[1]

Defendant Robinwood West Community Improvement District ("Defendant" or "the District") is a political subdivision of the state of Missouri, organized under the Community Improvement District Act ("the Act").[2] The Act provides that property owners within a given area may vote to become a Community Improvement District ("CID"), which can be organized as either a non-profit corporation or a political subdivision. Those CIDs choosing the latter, such as the District, obtain certain governance powers, principally the power to tax in order to carry out

---

[1] The Court's recitation of the facts is taken from Plaintiffs' Statement of Uncontroverted Material Facts [doc. #41], Defendant's Response to Plaintiffs' Statement of Uncontroverted Material Facts and Motion to Strike Affidavits [doc. #53], and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Statement of Uncontroverted Material Facts [doc. #56].

[2] Mo. Rev. Stat. §§ 67.1401-67.1571. For a comprehensive overview of the Act, see Joseph G. Lauber, *Public-Private Partnership in Community Development: Applying Constitutional Standards for Implementing the Missouri Community Improvement District Act*, 59 J. Mo. B. 80 (2003).

public improvements. Pursuant to the Act, the District is governed by an elected Board of Directors.

Prior to the election held on June 10, 2008, only registered voters residing within the District were permitted to vote in board elections. In the June 2008 election, however, the Saint Louis County Board of Elections ("the Board of Elections") – administering the election for the District under the terms of the Act – mailed ballots to registered voters and to all owners of real property in the District, with landowners receiving a ballot for each parcel of land they owned at the time. The Act does provide that qualified voters, for purposes of board elections, are "registered voters and owners of real property . . . which is located within the district,"[3] but it is unclear why the Board and the District made this change for the June 2008 election given that this provision has been in effect since 1998.

In the June 2008 election, there were a number of differences between voting as a registered voter and voting as a nonresident landowner. Although the Board of Elections has practices in place that allow it to compare signatures of registered voters on returned ballots in order to detect voter fraud, it does not have any such practices with respect to the signatures of property owners. The Board of Elections and the District also did not screen the returned property owner ballots to determine whether the individuals who voted the ballots met the general criteria for voter registration in Missouri, such as U.S. citizenship and not being in prison or on parole for committing a felony. Additionally, for real property owned by a trust, ballots were addressed to the resident of the property. Because of this, one District resident claimed that he may have voted a property-owner ballot without authority to do so, as the real owner of his home is a trust of which his sister is trustee.

---

[3] Mo. Rev. Stat. § 67.1401.2(14)(c).

There were two issues on the ballot in the June 2008 election: a property tax issue on which only registered voters were entitled to vote, and the board election, for which District property owners received an additional vote for each parcel of land owned. When the ballots were counted, it was determined that a total of 477 ballots were cast on the property tax issue, versus 741 ballots on the director election (a difference of 264 ballots), and it is unknown what percentage of that difference resulted from individuals casting more than one vote. There were two director seats at play in the election, and 38 votes ultimately separated the second-place and the third-place candidate.

Plaintiffs filed the instant action in December 2008, alleging that the District's practices of granting voting power on the basis of real property ownership and permitting individuals to cast more than one vote in elections are unconstitutional. Plaintiffs Noel Day, James Strake, and Aimee Pavey are registered voters who do not own land in the District, and therefore received one ballot for the June 2008 election. Plaintiffs Barbara Monroney, Janet Kirk, Paula Smith, Cathy Doyel, Esther Swartz,[4] and Adrienne Breen are registered voters in the District and also own one parcel of real property there; they all received two ballots for the June 2008 election. Plaintiffs J. Sharon Wilson, Judith Hale, David Hood, and Helen Horn are likewise registered voters in the District but own property jointly with their spouses, so in their cases, the property-owner ballot was addressed to both spouses. Plaintiff Barbara Schlottach received three ballots – one as a registered voter and two property-owner ballots addressed to Barbara Frank and Barbara Frank Schlottach, respectively – the names under which she owns two separate pieces of property. Plaintiffs Herbert Strake and Pauline Strake received one ballot, as they own one parcel

---

[4] Esther Swartz died during the pendency of this action and has been replaced as a named Plaintiff by the executor of her estate, Craig Swartz.

3

of real property in the District jointly but are registered voters at their primary address outside of the District.

In March 2009, the District's Board of Directors passed a resolution providing for an election to take place in June 2009 to elect one successor director and to vote on proposed amendments to the District's bylaws. As in the June 2008 election, the District determined that only registered voters would be entitled to vote on the bylaw issue, while registered voters and real property owners would vote on the director election. In April 2009, the Court issued a preliminary injunction [doc. #31], under which the District is prohibited from permitting qualified voters from receiving, casting, or having counted more than one vote in any election, and the District passed a resolution to that effect in May 2009. The District has pushed back the election originally to be held in June 2009 to November 2009, however, due to uncertainty as to whether it may constitutionally permit the District's nonresident landowners to vote on the election of the successor director.

Plaintiffs bring their claims under 42 U.S.C. § 1983, alleging that Mo. Rev. Stat. § 67.1401.2(14)(c) – the provision of the Act providing that owners of real property are qualified voters for board of director elections in community improvement districts – is unconstitutional. Plaintiffs also seek a declaratory judgment to that effect, permanent injunctive relief, and nominal damages.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material

4

facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

Plaintiffs contend that they are entitled to summary judgment because (1) Mo. Rev. Stat. § 67.1401.2(14)(c), as applied to Plaintiffs, violates the Equal Protection Clause of the Fourteenth Amendment in that Defendant has granted multiple votes in District board elections to individuals who meet the statutory definition of "qualified voter" in more than one way; and (2) § 67.1401.2(14)(c) is facially unconstitutional under the Equal Protection Clause in granting nonresident landowners the right to vote in District board elections. Defendant asserts that the voting practices prescribed by the statute, both facially and as applied, are justified by compelling governmental interests, and that Defendant is shielded from liability for civil damages by the doctrine of qualified immunity.[5]

### A. *Qualified Immunity*

Defendant claims that it has qualified immunity from Plaintiffs' claims for nominal damages because the District's actions "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

---

[5] Defendant also claims that the St. Louis County Board of Elections, not Defendant, is the proper defendant to this action. The Court considered and rejected this argument in its Memorandum and Order dated April 29, 2009 granting Plaintiffs a preliminary injunction [doc. #31].

6

457 U.S. 800, 818 (1982). The defense of qualified immunity, however, is not available to municipalities. *Owens v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980). Thus, the Court finds that qualified immunity is not applicable and therefore turns to the merits of Plaintiffs' claims.

### B.     *Plaintiffs' As-Applied Challenge to § 67.1401.2(14)(c)*

Plaintiffs contend that Defendant has applied § 67.1401.2(14)(c) in an unconstitutional manner by permitting registered voters who are also District landowners to cast multiple votes in board elections.[6] Defendant claims that this practice serves a compelling governmental interest in that landowners would not choose to form CIDs without the incentive of having a greater voice in their governance.

"The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969). As such, the Equal Protection Clause of the Fourteenth Amendment guarantees that in an election of officials who will exercise "general governmental powers" over a geographic area, every qualified voter's vote must be given "substantially the same weight as that of any other voter." *Hadley v. Junior College Dist. of Metro. Kansas City*, 397 U.S. 50, 53 (1970) (citing *Avery v. Midland County*, 390 U.S. 474, 485 (1970)). This guarantee applies with equal force in congressional elections, state elections, and local elections, because where there is an open election, "there is no discernible, valid reason why constitutional distinctions should be drawn on the basis of the purpose of the election." *Id.* at 54. On the other hand, where a governmental

---

[6] Although Defendant has passed a resolution providing that individuals will no longer be permitted to cast more than one vote in director elections, Plaintiffs' claims are not moot because they have made a request for nominal damages. *Kuhlmeier v. Hazelwood School Dist.*, 596 F. Supp. 1422, 1427 (E.D. Mo. 1984), *rev'd on other grounds*, 795 F.2d 1368 (8th Cir. 1986), *rev'd*, 484 U.S. 260 (1988); *see also Pucket v. Rounds*, 2006 WL 120233, at *6 (D.S.D. 2006).

7

entity has a "special limited purpose" and its activities have a "disproportionate effect" on landowners as a group, it is permissible to distribute voting power, for example, in proportion to property ownership. *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 728 (1973) (permissible to restrict voting for board of directors of water district to landowners, whether or not residents of the district, and distribute voting power in proportion to acreage owned); *see also Ball v. James*, 451 U.S. 355, 370-71 (1981) (approving similar voting scheme for agricultural improvement and power district).

The Court concludes that *Hadley* prohibits Defendant from granting multiple votes on the election of directors to the District's landowners. Due to Defendant's application of § 67.1401(14)( c) in the June 2008 election, Plaintiffs who were registered to vote in the District but did not own property there – Noel Day, James Strake, and Aimee Pavey – only received one vote, whereas land-owning registered voters and owners of multiple parcels of land in the District received multiple votes. In other words, these Plaintiffs' votes were not given "substantially the same weight," *Hadley*, 397 U.S. at 53, as those of land-owning voters.

It does not matter that the organization of the District's governing body more closely resembles that of a corporation than the traditional municipal government model; as the Supreme Court stated in *Hadley*, the relevant question is whether the elected official will exercise "general governmental powers" over a specific area, 390 U.S. at 485, and that is certainly the case here. A community improvement district's board of directors has essentially the same powers as any other municipal government, such as the powers to tax, to enter into contracts, and to carry out public improvements. *See* Mo. Rev. Stat. § 67.1461.1(1-29) (providing that a community improvement district has all of the powers necessary to carry out the purposes of the Act and setting out a non-exclusive list of twenty-nine powers). Defendant's board election is therefore the functional

equivalent of any other municipal election of governing officials, and as such, the Equal Protection Clause demands that Defendant allow all qualified voters to vote for directors on equal terms.

Thus, the Court concludes that Plaintiffs are entitled to summary judgment on their claims alleging that § 67.1401.2(14)(c) is unconstitutional as applied because permitting certain District landowners to cast multiple votes in board elections violates the one person, one vote guarantee of the Equal Protection Clause.

### C. Plaintiffs' Facial Challenge to § 67.1401.2(14)(c)

Plaintiffs argue that § 67.1401.2(14)(c) – even assuming Defendant ensures that each qualified voter receives only one vote in board elections – is facially unconstitutional in granting the right to vote based on property ownership.[7] Specifically, Plaintiffs claim that this grant of voting rights is unconstitutional because it dilutes the votes of registered voters and does not subject those voters, qualifying as landowners, to the same standards as those required of registered voters. Defendant contends that the creation of CIDs would not be possible without property-based voting, and that the State therefore has a compelling interest in granting property-based voting rights in the CID context.

While it is well-established that there are constitutional minimums on voting rights – for example, that they may not be denied based on gender, race, national origin, or based on age to those age eighteen or over – these claims present the less-explored question of whether the Equal Protection Clause of the Fourteenth Amendment provides a constitutional ceiling on a political

---

[7] Plaintiffs have not claimed that § 67.1401.2(14)(c) is unconstitutional as applied by Defendant to permit property-based voting. Instead, their as-applied challenge, discussed above, is confined to Defendant's practice of permitting individuals to cast multiple votes in its board elections.

9

entity's power to enfranchise voters to participate in its elections. Although the Equal Protection Clause does not, in most instances, give rise to substantive rights, an exception to this general rule is found in the substantive right of a qualified voter, once an electoral system is established, "to participate in the electoral process equally with other qualified voters." *Harris v. McRae*, 448 U.S. 297, 322 n.25 (1980) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)).

In spite of *Reynolds*' equal participation mandate, the mere fact that a statute affects the right to vote does not automatically give rise to strict scrutiny. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 432 (1992) ("Petitioner proceeds from the erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny."). Instead, courts considering equal protection challenges to election laws apply the more "flexible standard" of *Anderson v. Celebrezze*, under which the court weighs "the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Crawford v. Marion County Election Bd.*, 128 S. Ct. 1610, 1616, 1616 n.8 (citing *Burdick*, 504 U.S. at 434; *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) (internal quotations omitted). Under this standard, regulations imposing "severe restrictions" on the right to vote "must be narrowly drawn to advance a state interest of compelling importance," while "reasonable, nondiscriminatory restrictions" are generally justified by "the State's important regulatory interests." *Burdick*, 504 U.S. at 434 (internal quotations and citations omitted).

Courts confronting equal protection claims asserting vote dilution[8] resulting from expansion of the voter base have generally employed a standard at the rational basis end of the

---

[8] As the Sixth Circuit has explained, "vote dilution" is a term of art that does not necessarily have constitutional significance, as the votes of registered voters are necessarily diluted any time additional voters are added to the rolls. *See Duncan v. Coffee County, Tenn.*, 69 F.3d 88, 94 n.3, 94-95 (6th Cir. 1995).

10

*Anderson* spectrum. *See May v. Town of Mountain View*, 944 F. Supp. 821, 824 (D. Colo. 1996) (listing cases from which the court concluded that a "vast majority" of courts have applied rational basis review), *aff'd*, 132 F.3d 576 (10th Cir. 1997); *Bjornestad v. Hulse*, 281 Cal. Rptr. 548, 560-63 (Cal. Ct. App. 1991) (surveying federal cases and finding that rational basis review applies unless the case deals with "malapportionment of a general governmental entity resulting in lesser-weighted votes on an individual basis, or with discrete and insular groups foreclosed hopeless from the political process, or with invidious discrimination"); *Phillips v. Beasley*, 78 F.R.D. 207, 211 (D. Ala. 1978) ("those who claim their votes are being unconstitutionally diluted not through apportionment or weighting schemes, but through franchising of additional voters should bear the burden of demonstrating that the state's decision is irrational or otherwise impermissible"), *rev'd on other grounds*, *Phillips v. Andress*, 634 F.2d 947 (5th Cir. 1981).

In applying this standard, courts facing vote dilution claims have held that a legislature's decision to expand the electorate is irrational and therefore unconstitutional where the enfranchised voters do not have a "substantial interest" in the outcome of the election. *See Duncan v. Coffee County, Tenn.*, 69 F.3d 88, 94-95 (6th Cir. 1995) (analyzing cases from the Fourth, Fifth, and Eleventh Circuits and rejecting a "compelling interest" standard); *Sutton v. Escambia County Bd. of Educ.*, 809 F.2d 770, 772 (11th Cir. 1987). In *Duncan*, the Sixth Circuit concluded that courts should consider the following factors in determining whether enfranchised voters have a "substantial interest" in an election: (1) the degree to which the non-resident voters finance the relevant district; (2) the voting power of non-resident voters; (3) the existence of cross-over students; and (4) the existence of joint programs. *Duncan*, 69 F.3d at 96.

Because Plaintiffs assert that § 67.1401.2(14)(c) is unconstitutional on its face, in order to succeed, they must demonstrate that there is "no set of circumstances" in which a CID's

11

nonresident landowners have a substantial interest in the outcome of board elections. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Although the third and fourth *Duncan* factors for determining "substantial interest" are not applicable to this statute, the first two indicate that Plaintiffs cannot meet their burden in this case. As for the first factor – the degree to which nonresident landowners finance the district – nonresident landowners are subject to the CID's taxing power, and payment of property taxes provides them with a substantial interest in the outcome of the CID's board elections. *See Duncan*, 69 F.3d at 96. The same is true with respect to the second factor; although in some circumstances enfranchising a large number of nonresident landowners might unconstitutionally disenfranchise a comparatively small number of registered voters, *id.*, there is no reason to believe that would be the result in *all* circumstances, and accordingly the statute is not facially unconstitutional on these grounds. *Salerno*, 481 U.S. at 745.

Plaintiffs also argue, however, that the statute violates the Equal Protection Clause insofar as it subjects registered voters to different qualifying standards than nonresident owners of real property. The statute defines "qualified voters," for purposes of electing members of a CID's Board of Directors, as:

> [R]egistered voters and owners of real property which is not exempt from assessment or levy of taxes by the district and which is located within the district per the tax records for real property of the county clerk, or the collector of revenue if the district is located in a city not within a county, of the thirtieth day prior to the date of the applicable election; . . .

§ 67.1401.2(14)(c). The statute does not include any express limitation on the phrase "owners of real property"; thus, it appears to afford property-based voting rights in CID board elections to all

landowners, which would necessarily include legal entities such as trusts, corporations, and the like. This grant of CID voting rights, however, is limited to natural persons by Mo. Rev. Stat. § 115.137.2, which states that "in elections for which ownership of real property is required by law for voting," "[a]ny *person* who and *only persons who* fulfill the ownership requirements shall be entitled to vote."[9] (emphasis added). As such, because § 115.137.2 prohibits a CID from granting nonresident landowner voting rights to legal entities, the Court need not address the constitutional significance of extending voting rights to such entities in order to resolve Plaintiffs' facial challenge.

There are, however, additional requirements imposed on registered voters that nonresident landowners do not need to satisfy in order to vote in CID board elections. Specifically, Mo. Rev. Stat. § 115.133 provides that registered voters must be: (1) U.S. citizens, (2) residents of Missouri, and (3) eighteen years old by the date of the election; and must not be: (a) adjudged incapacitated, (b) currently imprisoned, (c) on probation or parole due to a felony conviction, or (d) previously convicted of a voting-related felony or misdemeanor. § 67.1401.2(14)(c), in contrast, does not impose any requirements for property-based voting beyond the ownership of real property in the CID.[10] In fact, it appears that the Missouri legislature specifically

---

[9] Somewhat curiously, the scope provision of the Comprehensive Election Act of 1977, of which § 115.137 is a part, provides that the Act does not apply to public elections in Missouri "for which ownership of real property is required by law for voting." Mo. Rev. Stat. § 115.005. Although one might read this provision as negating § 115.137.2, the Court concludes that given that § 115.137 is titled as an exception – "Registered voters may vote in all elections-exception" – this provision instead reinforces § 115.005, to the extent that it specifically points out a circumstance in which the Act's general requirements for registered voters do not apply.

[10] Plaintiffs also claim that although the St. Louis County Board of Elections has the means of detecting voter fraud by analyzing the ballot signatures of registered voters, it does not have that same capability with respect to the signatures of property owners (assuming they are not also registered voters). This is not a relevant consideration in the context of Plaintiff's facial challenge to the statute, but the Court believes that such a discrepancy would not rise to the level

contemplated such differing standards, and therefore purported to waive the registration requirements in elections for which ownership of real property is a prerequisite to voting rights. *See* Mo. Rev. Stat. § 115.139 (unregistered voters may not vote in elections except as provided in Mo. Rev. Stat. § 115.137.2, the above-referenced statute providing that persons fulfilling the ownership requirements are entitled to vote in elections for which real property ownership is required). As with Plaintiffs' vote dilution claim, this classification is not a severe voting restriction or an example of invidious discrimination, and it is therefore subject to rational basis review. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). A statute will survive rational basis review if "any reasonably conceivable state of facts" justifies the regulation. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

With respect to the U.S. citizenship and Missouri residency requirements in § 115.133.1, the Court concludes that § 67.1401.2(14)(c)'s avoidance of the registered voter requirements for persons voting as owners of real property is not irrational. As discussed above, the Missouri legislature presumably decided to extend CID board election voting rights to nonresidents due to the effect on property owners of local taxation for public improvements – one of the principal purposes of CID creation. Under this rationale, it is perfectly logical for the legislature to grant voting rights to all nonresident property owners in a CID, not only those nonresidents who reside in Missouri and are U.S. citizens. *See May v. Town of Mountain Village*, 944 F. Supp. 821, 822, 825 (D. Colo. 1996) (approving enfranchisement of nonresident landowners for municipal elections and acknowledging that such landowners may be located throughout the United States and abroad).

---

of a constitutional violation unless voters participating solely as nonresident landowners made up a significant portion of the electorate or if there was actual evidence of voter fraud.

Turning to the remaining registration qualifications, however, the Court finds that the Missouri legislature's decision not to impose the age, incapacity, and crime-related restrictions for nonresident voting landowners was irrational and arbitrary. To the extent the Missouri legislature had a reason for setting the threshold voting age at eighteen in § 115.133.1,[11] the Court cannot conceive of any possible reason – and Defendant has offered none – why that same rationale would not apply to a CID's nonresident landowners. *See May*, 944 F. Supp. at 823 (voting scheme approved by court required that nonresident voters be age eighteen or over). Likewise, the Court finds it irrational that the Missouri legislature would obviate the prohibitions in § 115.133.2 on voting for persons adjudged incapacitated, in confinement, on parole or probation for committing a felony, and those who have been convicted of voting-related crimes. The Missouri legislature has deemed such individuals unfit to register to vote, and as with the age requirement, the Court is not aware of any reason why this judgment would be affected by the ownership of real property.

Although the Court finds that the Missouri legislature's decision not to impose these restrictions on persons voting in CID board elections as nonresident landowners violates the Equal Protection Clause, complete invalidation of the statute is not the appropriate remedy here. Wholesale invalidation of a statute is disfavored where a statute has a limited number of unconstitutional applications; if possible, courts should either "enjoin only the unconstitutional applications of a statute while leaving the other applications in force, or . . . sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006) (internal citations omitted).

---

[11] U.S. Const. amend. XXVI, § 1 provides that the right to vote cannot be denied on the basis of age to persons age eighteen or over, but it does not prohibit the states from setting a lower voting age. *See also* Mo. Const. art. 8, § 2.

In *Ayotte*, the Supreme Court noted that "[o]nly a few applications" of the statute at issue presented constitutional difficulties, and the Court therefore instructed the lower courts that on remand, it would be permissible to issue a declaratory judgment and an injunction focused on the unconstitutional applications of the statute. *Id.* at 331. Whereas in *Ayotte* further proceedings on remand were necessary because there was some question as to whether complete invalidation might be more consistent with legislative intent, *id.*, there is nothing about the statute at issue here that suggests a similar problem. The Court concludes that narrow declaratory and injunctive relief – under which Missouri CIDs will be enjoined from granting CID voting rights to nonresident landowners who are under the age of eighteen pursuant to § 115.133.1 or who violate the restrictions in § 115.133.2 – is the appropriate means of preventing unconstitutional application of the statute while preserving its purpose of permitting a CID's nonresident landowners to have a voice in its governance.

## IV. CONCLUSION

The Court concludes that Plaintiffs' Motion for Partial Summary Judgment will be granted.[12] Plaintiffs are entitled to summary judgment on their claims that Defendant unconstitutionally applied Mo. Rev. Stat. § 67.1401.2(14)(c) to permit District landowners to cast multiple votes in the June 2008 election of members of the District's Board of Directors. Summary judgment in favor of Plaintiffs is also proper on their claims that § 67.1401.2(14)(c) is facially constitutional, insofar as it does not subject persons voting as nonresident landowners to certain requirements that are prerequisites for voting as a registered voter. Specifically, the Court

---

[12] The Court notes that the trial date set for April 12, 2010 remains in effect because Plaintiffs did not move for summary judgment on their claims under the Missouri Constitution. Although the outcome of the state constitutional claims is a foregone conclusion based on the Court's ruling in this Order, the Court may not grant judgment on those claims on the Court's own initiative.

16

enjoins application of § 67.1401.2(14)(c) to permit persons to vote in CID elections who do not fulfill the age requirement in § 115.133.1 and who are disqualified from registering to vote under § 115.133.2.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [doc. #40] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Statement of Material Facts [doc. #53] is **DENIED**.

Dated this 2nd Day of November, 2009.

*E. Richard Webber*
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE